IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-00547-PAB

NICHOLAS CUTSHALL,

     Applicant,

v.

PEOPLE OF THE STATE OF COLORADO and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

### ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS

---

     This matter is before the Court on Applicant Nicholas Cutshall's *pro se*
Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 1],
filed on March 4, 2011.  Respondents have filed an Answer [Docket No. 20].  Applicant
has not filed a Traverse.  Having considered the Application and Answer, along with the
state court record, the Court concludes that the Application should be denied.

## I.  BACKGROUND

     On August 3, 2007, a jury in the District Court for the City and County of Denver,
Colorado ("the trial court"), Case No. 06CR3968, convicted Applicant of one count of
sexual assault on a child (pattern of abuse) and five counts of sexual assault on a child.
State Court R. 8/03/07 Trial Tr., at 92-93.  The pertinent facts were summarized by the
Colorado Court of Appeals as follows:

          At the time of the alleges assaults, the victims, twin sisters, DH1
and DH2, were seven years old.  They lived with their sixteen-year-old
sister, brother, father, and father's fiancée. [Applicant] was a foster child in

the twins' grandmother's home.  The grandmother lived less than two miles away from the twins, and [Applicant] visited their home regularly.  In June 2006, DH1 told her older sister that [Applicant] took pictures of DH2's "private areas" and then DH1 pointed to "her vaginal area."  DH2 confirmed that [Applicant] had taken the pictures.  When the older sister asked whether [Applicant] had ever done anything to her, DH1 said that he had touched her in her vaginal areas more than once during the past year.  The older sister disclosed these conversations to the grandmother, who called the police.

An investigating officer interviewed the [Applicant]. During the interview, [Applicant] admitted to having sexual contact with the children and, based upon these statements, was placed under arrest. [Applicant] later testified that he never assaulted the twins and that he only made these confessions because he was scared.

Both children were interviewed by a forensic interviewer and each described various incidents of sexual contact involving [Applicant].  DH1 told the interviewer that she was ever worried about her sister because of the pictures [Applicant] had taken.  She said that [Applicant] took her and her sister into their older sister's room, had sexual contact with DH1, and would not let them leave the room.  DH1 also said that [Applicant] engaged in conduct with DH2 amounting to sexual contact.  DH2 told the interviewer that [Applicant] "did something bad."  She also said that he pulled her into her sister's bedroom and took a picture of her upper legs.

*People v. Cutshall*, No. 07CA2413 (Colo. App. Nov. 19, 2009) (unpublished opinion)*,* Docket No. 9-4, at 1-2.

The state trial court sentenced Applicant to a prison term of eighteen years to life on the pattern count and concurrent terms of six years to life on each of the remaining counts.  State Court R. 10/26/07 Sentencing Hrg., at 31-32.

The Colorado Court of Appeals affirmed Applicant's conviction on direct appeal. Docket No. 9-4.  The Colorado Supreme Court denied certiorari review on March 22, 2010.  Docket No. 9-6.

2

Applicant filed a motion for post conviction relief to reconsider his sentence pursuant to Colo. Crim. P. Rule 35(b) on August 18, 2010, which the trial court denied on September 2, 2010.  Docket No. 9-1.  He did not appeal the trial court's order.

## II.  HABEAS CLAIMS

Applicant filed his § 2254 Application on March 4, 2011.  He asserts three claims: (1) the trial court erred in admitting the child victim's hearsay statements at trial; (2) the trial court erred in denying his motion to suppress coerced inculpatory statements he made during a police interrogation; and (3) the trial court deprived him of a fair trial when it: (a) improperly admitted a DVD recording of Applicant's police interview; (b) erroneously allowed the prosecution's investigator to discuss interrogation techniques; and (c) erroneously denied the motion for a mistrial.

Upon preliminary review of the Application, Magistrate Judge Boyd N. Boland ordered the Respondents to file a pre-answer response addressing the affirmative defenses of timeliness and exhaustion of state remedies.  Respondents conceded that the action was timely under the AEDPA, but asserted that claims 1, 3(b) and 3(c) were not exhausted because Applicant failed to present those claims to the state courts as federal constitutional claims.  The Court disagreed with Respondents and found that Applicant exhausted state court remedies for all of his claims.  *See* July 14, 2011 Order [Docket No. 13].  The case was drawn to a District Judge and to a Magistrate Judge. *Id.*  The Court reviews the merits of the claims below.

## III.  LEGAL STANDARD

### A.  Habeas Corpus Actions

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the Court must answer under § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

4

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the court's inquiry

pursuant to § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is

implicated, the court must determine whether the state court's decision was contrary to

or an unreasonable application of that clearly established rule of federal law.

*See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a)
> "the state court applies a rule that contradicts the governing law set forth
> in Supreme Court cases"; or (b) "the state court confronts a set of facts
> that are materially indistinguishable from a decision of the Supreme Court
> and nevertheless arrives at a result different from [that] precedent."
> *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir.2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405).  "The word 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly
> established federal law when it identifies the correct governing legal rule
> from Supreme Court cases, but unreasonably applies it to the facts.  *Id*. at
> 407–08.  Additionally, we have recognized that an unreasonable
> application may occur if the state court either unreasonably extends, or
> unreasonably refuses to extend, a legal principle from Supreme Court
> precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry.  *See Williams*, 529 U.S. at 409–10.  "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly.  Rather that application must also be unreasonable."  *Id*. at 411. "[A]

decision is 'objectively unreasonable' when most reasonable jurists exercising their

5

independent judgment would conclude the state court misapplied Supreme Court law."

*Maynard*, 468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires
> considering the rule's specificity. The more general the rule, the more
> leeway courts have in reaching outcomes in case-by-case determinations.
> [I]t is not an unreasonable application of clearly established Federal law
> for a state court to decline to apply a specific legal rule that has not been
> squarely established by [the Supreme] Court.

*Harrington v. Richter*, --- U.S. ----, 131 S.Ct. 770, 786 (2011) (internal citation and
quotation marks omitted).

In conducting this analysis, the court "must determine what arguments or theories

supported or . . . could have supported[ ] the state court's decision" and then "ask

whether it is possible fairminded jurists could disagree that those arguments or theories

are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id*.

Moreover, "review under § 2254(d)(1) is limited to the record that was before the state

court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, --- U.S. ----, 131

S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was an
> error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 131 S.Ct. at 786-87.  The Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated."  *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999)  Thus, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Richter*, 131 S.Ct. at 784.

Claims asserting factual errors are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), the court presumes that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the court must review the claim de novo and the deferential standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### B.  *Pro Se* Litigant

Applicant is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those

drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).  A court may not assume that an applicant can prove facts that have not been alleged or that a respondent has violated laws in ways that an applicant has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  The Applicant's pro se status does not entitle him to an application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## IV.  ANALYSIS

### A.  Claim One

In his first claim, Applicant asserts that the trial court erred in admitting the child victim's hearsay statements.  Application, at 5.  The Court construes Applicant's first claim liberally as alleging a violation of his Sixth Amendment confrontation right.  The Court determined previously that Applicant exhausted this claim in the state courts as a Sixth Amendment confrontation claim.  *See* Docket No. 13, at 4-5 (citing Applicant's opening brief on direct appeal of his conviction, Docket No. 9-2, at 6-11 of 26).  Applicant also argued to the state appellate court that the admission of the child hearsay statements violated state law. However, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotation marks and citation omitted).

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that a trial court's admission of testimonial hearsay against a defendant at trial violates the defendant's confrontation rights unless the witness is unavailable and there was a prior opportunity for cross-examination. But "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 n. 9 (citing *California v. Green*, 399 U.S. 142, 162 (1970)).

The state appellate court rejected Applicant's claim on the merits pursuant to a state statute, Colo. Rev. Stat. § 13-25-129(1)(b)(I) (2006) (child hearsay statute), as interpreted by the Colorado Supreme Court in *People* v. *Argomaniz-Ramirez*, 102 P.3d 1015 (Colo. 2004). Docket No. 9-4, at 3-7. In *Argomaniz-Ramirez*, the Colorado Supreme Court held that the admission of out-of-court statements by child witnesses at a defendant's trial would not violate the defendant's Sixth Amendment confrontation rights because the hearsay declarants were going to testify at trial and be subject to cross-examination. 102 P.3d at 1018. In reaching its conclusion, the court in *Argomaniz-Ramirez* relied on *California v. Green*, 399 U.S. 142 (1970), noting that *Green* had not been overruled by *Crawford*. *Id.* *Green* held that "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." 399 U.S. at 158. In Applicant's case, the child witnesses were also available and testified at trial. The Court thus finds that the state appellate court's disposition of

Applicant's claim was consistent with controlling federal law.  As such, Applicant cannot prevail on his first claim.

### B.  Claim Two

For his second claim, Applicant asserts that the trial court erred in denying his motion to suppress inculpatory statements he made during a police interrogation. Application, at 6.  Applicant maintains that the detective who questioned him for two and a half hours made false representations about the victims' statements to coerce Applicant's confession.  *Id.*

Incriminating statements obtained by government acts, threats, or promises that permit the defendant's will to be overborne run afoul of the Fifth Amendment and are inadmissible at trial as evidence of guilt.  *Malloy v. Hogan*, 378 U.S. 1, 7 (1964). Without more, however, misrepresentations, ruses, and trickery by questioning authorities do not render an otherwise voluntary confession involuntary.  *Frazier v. Cupp,* 394 U.S. 731, 739 (1969) (interrogator's misrepresentation to suspect that accomplice had already confessed did not render suspect's confession coerced).  In determining whether a defendant's inculpatory statements were voluntary, the Court considers the following factors under a totality-of-the-circumstances test: (1) the age, intelligence, and education of the defendant; (2) the length of the detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to physical punishment.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *see also Mincey v. Arizona*, 437 U.S. 385 (1978).  The Court is mindful that "coercive police

activity is a necessary predicate to the finding that a confession is not 'voluntary.'"
*Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

Before trial, Applicant filed a motion to suppress his statements to the police.
The detective who interviewed Applicant testified at an evidentiary hearing that he lied
to Applicant about statements made by the victims in an effort to elicit a full confession.
State Court R. 6/21/07 Hr. Tr., at 37-59.  The detective further testified that he told
Applicant he would get him "help" if he confessed, but did not make any representations
to Applicant about potential criminal penalties or prison time.  *Id.* at 41-42, 60-63.  The
trial court ruled that Applicant received adequate *Miranda* warnings and that he
knowingly and voluntarily waived his right to remain silent in responding to police
questions.  State Court R., 6/21/07 Hrg. Tr., at 101-111.

The Colorado Court of Appeals evaluated Applicant's claim under a state law
"totality of the circumstances" test similar to the federal standard, Docket No. 9-4, at 8-
10, and determined the following:

> [T]he trial court found that even though [Applicant] was not in
> custody, he was properly advised of his *Miranda* rights, and he made a
> knowing and intelligent waiver of those rights. The challenged admissions
> were made during an interrogation, after the valid waiver. Though many of
> the statements were made in response to leading questions, the trial court
> noted that there were several instances in which [Applicant] volunteered
> information that clearly went beyond what was asked.
>
> As to the other factors, the court found that the overall tone of the
> two-hour interview was generally friendly and professional, and that there
> was "absolutely nothing in the detective's tone, demeanor, or manner . . .
> that would raise any eyebrows." The court found that [Applicant]
> understood what he was being asked, was responsive, and was entirely
> coherent. While the court found that there were no overt or implied threats
> or promises, it also found that (1) the detective lied to the [Applicant]
> about the extent of the twins' allegations against him; (2) the detective
> repeatedly told [Applicant] that he could tell when [Applicant] was lying;

11

and (3) the detective told [Applicant] that if he confessed he could get the help he needed. These findings of fact are clearly supported by the record.

[Applicant] asserts that the investigating officer's misrepresentations rendered his statements involuntary. We are not persuaded:

> Although deception by the police is not condoned by the courts, the limited use of ruses is supported by the overwhelming weight of authority. Most courts have recognized that ruses are a sometimes necessary element of police work and have held that deception standing alone does not invalidate consent; it is one factor to be considered in assessing the totality of the circumstances.

*People v. Speer*, 216 P.3d 18, 22 (Colo. App. 2007) (*cert. granted* Dec. 15, 2008) (quoting *People v. Zamora*, 940 P.2d 939. 942 (Colo. App. 1996).

The detective's misrepresentations are but one important factor in assessing whether [Applicant's] will was overborne and supplanted by that of the detective. However, under the totality of the circumstances, we conclude that [Applicant's] statements were not forced upon him by police conduct and thus, the trial court did not abuse its discretion in concluding that his statements were voluntary and admissible.

*Id.* at 9-12.

The state courts' factual findings are presumed correct and are supported by the detective's testimony at the evidentiary hearing on Applicant's motion to suppress. *See generally* State Court R. 6/21/07 Hrg. Tr. Applicant has not pointed to any clear and convincing evidence to the contrary. Moreover, the state appellate court's application of the totality-of-the circumstances test was consistent with federal law. There is no dispute that Applicant was advised of his *Miranda* rights, that he acknowledged he understood those rights, and that he freely and voluntarily executed a waiver of those rights. Applicant does not claim that the detective threatened or injured him during the

12

ensuing interrogation or that Applicant was in any way fearful.  *Cf. Connelly,* 479 U.S. at

163-64 at n. 1 (collecting cases where circumstances warranted Court's conclusion that

police coercion was present).  The state appellate court's determination that the

detective's actions were not so egregious as to warrant the conclusion that Applicant's

will was overborne was not "so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement.  *Richter*, 131 S.Ct. at 786-87; *see also Frazier*, 394 U.S. at 739.

Accordingly, Applicant cannot prevail on his second claim.

### C.  Claim Three

In claim three, Applicant asserts that the trial court's evidentiary rulings deprived

him of a fair trial.  Specifically, Applicant claims that the trial court erred in: (a) admitting

a DVD recording of his police interview; (b) allowing the prosecution's investigator to

discuss interrogation techniques; and (c) denying his motion for a mistrial.  Application,

at 6.

Errors of state law are not redressable in a federal habeas proceeding unless the

error was "so grossly prejudicial that it fatally infected the trial and denied the

fundamental fairness that is the essence of due process."  *Hooker v. Mullin*, 293 F.3d

1232, 1238 (10th Cir. 2002); *see also Estelle*, 502 U.S. at 67.  The fundamental

fairness inquiry compels examination of the entire proceedings.  *See Le v. Mullin*, 311

F.3d 1002, 1013 (10th Cir. 2002) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643

(1974) (citation omitted)).  Further, "because a fundamental fairness analysis is not

subject to clearly definable legal elements, when engaged in such an endeavor a

federal court must tread gingerly and exercise considerable self restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted).

Finally, a federal habeas petitioner is not entitled to relief for a constitutional violation that occurred during a state criminal proceeding unless "the . . . error [at issue] 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

With the foregoing legal principles in mind, the Court addresses each of Applicant's allegations in claim three below.

### 1. *Admission of DVD Recording of Applicant's Police Interview*

Applicant challenges the trial court's admission of the DVD recording of his police interview as a violation of his Sixth Amendment confrontation right because the interviewing detective was not available for cross-examination at trial.

Applicant raised a confrontation clause objection at trial.  State Court R. 7/31/07 Trial Tr., at 51-56.  The trial court found that Applicant's confrontation right was implicated, but ruled that the DVD recording was admissible, *Id*. at 67-68, and gave the jury the following limiting instruction:

> You're going to hear statements on this . . . DVD, by [the detective]. [The detective] is not here.  So for that reason and others, I have ruled that you're not to consider the statements of the [detective] for deciding whether they were truthful or not.
>
> In other words, you'll hear [the detective's] statements.  Questions he's asking the witnesses.  But [his] statements, you're not to consider as truthful evidence in this case.  And you should not use them in making your decision.  You shouldn't [depend] on [the detective's] statements.

*Id*. at 74-75.

14

At the end of trial, the jury was further instructed:

> The court admitted certain evidence for a limited purpose.  At that time you were instructed not to consider it for any purpose other than the limited purpose for which it was admitted.

> You are again instructed that you cannot consider the evidence admitted for a limited purpose except for the limited purpose for which it was admitted.

State Court R., Court File, Jury Instruction No. 6.

On direct appeal, the state appellate court assumed, without deciding, that admission of the DVD recording violated the Applicant's right to confrontation, but concluded that the error was harmless beyond a reasonable doubt.  Docket No. 9-4, at 14.  The court reasoned:

> In so concluding, we consider a number of factors including "the importance of the witness'[s] testimony to the prosecution's case, whether the testimony was cumulative, the presence or absence of corroborating or contradictory evidence on the material points of the witness[s]' testimony, the extent of the cross-examination otherwise permitted, and the overall strength of the prosecution's case." [state case law citations omitted].

> The record reveals that [Applicant] was permitted to read a pretrial cross-examination of the investigating officer into evidence.  This pretrial cross-examination, which was conducted at a motions hearing, directly confronted the issue of the misrepresentations and was used to attack the officer's credibility.  In addition, the trial court instructed the jury that it was not to consider the detective's statements when making its decision.  The court gave this limiting instruction prior to the admission of the DVD recording and at the conclusion of the trial.  Absent a contrary showing, it is presumed that the jury understood and heeded the trial court's instructions. [state case law citation omitted].

> Further, both DH1 and DH2 testified, and were thoroughly cross-examined at trial.  Both children testified that [Applicant] had taken pictures of their "privates" and had touched them in the vaginal areas.  Moreover, [Applicant's] oral confessions, during his interview with the detective, provided overwhelming evidence of guilt.  Therefore, any error in admitting the DVD recording was harmless beyond a reasonable doubt.

*Id.* at 14-15.

The Court must uphold the state appellate court's resolution of Applicant's claim on the basis of harmless error, so long as that determination was consistent with federal law.  Under *Chapman v. California*, 386 U.S. 18, 24 (1967), a constitutional error is harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."

The Court, having carefully reviewed the state court record, finds that the trial testimony and statements of the victims and the Applicant's confession and cross-examination provide ample support for the jury's verdict.  State Court R. 7/31/07 Trial Tr., at 139-166; 8/1/07 Trial Tr., at 9-40; 8/2/07 Trial Tr., at 56-102.  Furthermore, any prejudice to Applicant from the detective's statements and leading questions during the videotaped interview was minimized by the admission of the transcript of Applicant's cross-examination of the detective at a pre-trial hearing.  State Court R. 6/21/07 Hrg Tr., at 37-59; 7/31/07 Trial Tr., at 84-110.  In addition, the trial court's limiting instruction to the jurors that they not consider the detective's statements and leading questions as evidence further reduced any potential prejudicial impact.  The Court finds that the state appellate court's decision comported with *Chapman* given that any constitutional error in admitting the detective's questions did not, beyond a reasonable doubt, contribute to the jury's verdict.  *See Spears v. Mullin*, 343 F.3d 1215, 1233 n.14 (10th Cir. 2003) (instructing that when "there is a state-court-*Chapman* determination to defer to under 28 U.S.C. § 2254(d)," the court must decide "whether the state court's finding of harmless error was contrary to or an unreasonable application of *Chapman*").

16

Applicant therefore is not entitled to federal habeas relief on this claim.  *See also*

*Brecht*, 507 U.S. at 623.

### 2.  *Admission of Investigator's Testimony About Interrogation Techniques*

Applicant next asserts that he was denied a fair trial when the trial court

erroneously allowed the prosecution's investigator to discuss interrogation techniques.

At trial, Applicant objected to the investigator's testimony as improper expert

opinion testimony because the investigator had not been endorsed as an expert

pursuant to the Colorado Rules of Civil Procedure.  State Court R. 7/31/07 Trial Tr., at

111-113.  The state trial court ruled that the investigator would be allowed to testify

based on his own personal experience, but could not offer any opinions.  *Id.* at 114.

The witness then testified in response to questions from the prosecutor that he has lied

to suspects during interrogations in an attempt to elicit confessions.  *Id.* at 115.

Applicant argued to the state appellate court on direct appeal that the trial court

erred in admitting the investigator's testimony because it bolstered the credibility of the

detective who interviewed Applicant using the same technique, but Applicant was

precluded from cross-examining the detective at trial about his misrepresentations.

Docket No. 9-2, at 16.

The Colorado Court of Appeals rejected Applicant's claim that the admission of

the investigator's testimony deprived him of a fair trial based on the following reasoning:

> [Applicant] argues that the second investigating officer's testimony
> was expert testimony and the officer was not endorsed as an expert under
> Crim. P. 16.  However, in our view, this testimony does not require
> scientific, technical, or specialized knowledge within the meaning of CRE
> 702. . . .

Nevertheless, our review of the record reveals that the inclusion of this testimony did not have a substantial influence on the verdict or impair the fairness of the trial. [state case law citations omitted]. Thus, for several reasons, any error may properly be deemed harmless. [*Id.*]

First, the majority of the second investigator's testimony was properly confined to descriptions of his own interrogation experiences and observations.  In addition, the prosecution's questions on redirect were focused on rehabilitating the [detective's] credibility.  And, further, the second investigator's testimony was not central to the prosecution's case.  Indeed, neither the prosecution nor [Applicant] mentioned interrogation techniques again during trial, nor did either party mention them in closing arguments.  It was the testimony of DH1 and DH2, the child hearsay testimony, and [Applicant's] confession that were central to, and overwhelming, in establishing [Applicant's] guilt.

Docket No. 9-4, at 17-18.

Again, this Court's task is to determine whether the state appellate court's application of the harmless error standard comported with *Chapman*.  *Spears*, 343 F.3d at 1233 n.14.  The Colorado Court of Appeals' factual finding that the investigator's testimony about interrogation techniques was not central to establishing the Applicant's guilt was reasonable in light of the victims' testimony at trial about Applicant's sexual abuse, the child hearsay statements admitted through the testimony of the victims' older sister and the patrol officers who responded to a dispatch call at the victims' residence, and Applicant's confession.  State Court R. 7/31/07 Trial Tr., at 73, 146-65; 8/01/08 Trial Tr., at 22-40, 75-80, 157-62, 204-09.  The investigator's testimony about his prior experience in lying to criminal suspects was limited and was not emphasized by the prosecution.  As such, the state appellate court's determination that the trial court's admission of the testimony was harmless was consistent with *Chapman*.  Applicant thus cannot prevail on this claim.  *See also Brecht*, 507 U.S. at 623.

### 3. Denial of Motion for Mistrial

Finally, Applicant claims that he was deprived of a fair trial when the trial court denied his motion for a mistrial after the prosecution elicited testimony about a child hearsay statement and improper expert opinion testimony that the trial court had ruled, *in limine*, was inadmissible.[1]

### a. Child Hearsay Statement

Applicant first asserts that he was entitled to a mistrial because, during testimony from the victim's grandmother, the prosecution elicited a child hearsay statement that the trial court had ruled was inadmissible because it was unduly prejudicial. *See* Docket No. 9-2, at 17-18. On direct appeal, the state appellate court determined that a mistrial was not warranted with regard to the admission of the hearsay statement based on the following trial proceedings:

> At trial, on August 1, 2007, the prosecution called a third investigating officer to testify. The officer was one of the patrolmen who responded to the grandmother's initial report of sexual assault. During direct examination, the prosecution attempted to ask the officer about statements that the grandmother had made to him. Specifically, the following exchange occurred:
>
> [Prosecutor]: All right. Did she make any other statement to you about what was going on?
>
> [Third Investigating Officer]: Yes. She told me that this wasn't the first time the girls –
>
> Before he could finish his statement, [Applicant] objected based on hearsay and moved for a mistrial. [Applicant] argued that the third investigating officer's statement was "too prejudicial," and left the jury with the impression that the twins had been abused prior to their outcry. After

---

[1] The Court construes this claim liberally to include the arguments Applicant made to the Colorado Court of Appeals on direct appeal. *See* Docket No. 9-2, at 16-20.

hearing arguments, the trial court determined that the danger of unfair prejudice outweighed the probative value and sustained [Applicant's] objection.  The court also denied the motion for a mistrial.

Declaring a mistrial is the most drastic of remedies, one warranted only when the prejudice from a particular incident is so substantial that its effect on the jury cannot be remedies by any other means. [state case law citation omitted]. . . .

Here, the child hearsay statement was not only incomplete, but it was also cumulative.  The older sister had previously testified that DH1 said that the assaults had been occurring for over a year.  In addition, the DVD recording of [Applicant's] confessions had already been shown to the jury.  Finally, both children had already testified that [Applicant] had assaulted them "two or three times."  Considering the limited nature of the officer's statement in comparison to the weight of the other evidence against [Applicant], we cannot say that the trial court abused its discretion by denying [Applicant's] motion for mistrial.

Docket No. 9-4, at 19-21.

The Colorado Court of Appeals' factual finding that the hearsay statement was cumulative to the Applicant's confession and other admissible testimony is presumed correct in this federal habeas proceeding and is supported by the state court record. Applicant has not pointed to any clear and convincing evidence to demonstrate how the admission of the hearsay statement prejudiced him at trial.  The Court finds that the state appellate court's determination was reasonable in light of the evidence presented at trial and was consistent with federal due process law.  Because admission of the hearsay did not render Applicant's trial as a whole fundamentally unfair, he is not entitled to federal habeas relief for this claim.

**b.  Expert Opinion Testimony on Delayed Disclosure**

Applicant next asserts that he was entitled to a mistrial because the prosecution's expert witness gave opinion testimony concerning delayed disclosure of

sexual abuse that the trial court had ruled was unreliable, and therefore, inadmissible. *See* Docket No. 9-2, at 18-20.

The trial court held a pre-trial hearing to determine the reliability of the clinical social worker's proffered expert testimony.[2]  The trial court decided that the social worker would be permitted to testify at trial about delayed disclosure by child victims. However, the court excluded any discussion about why DH1 and DH2 delayed in their disclosure.  At trial, the social worker began to discuss the causes of delayed disclosure.  State Court R. 8/01/07 Trial Tr., at 257.  Defense counsel objected and the prosecutor attempted to guide the witness away from such discussion.  *Id.* at 257-258. However, in attempting to answer the prosecutor's questions, the witness continued to discuss why a child might delay in disclosure or make a gradual disclosure, to which defense counsel repeatedly objected.  *Id.* at 258-272.  Counsel's objections were sustained by the trial court.  *Id.*  At the conclusion of the testimony, defense counsel moved for a mistrial.  *Id.* at 281.  The trial court did not specifically rule on the motion and the trial proceeded.

On direct appeal, the Colorado Court of Appeals determined the following as to Applicant's claim:

> While the social worker's testimony strayed beyond the boundaries set by the pretrial court, balancing it with the overwhelming evidence that had been presented prior to her testimony, we cannot conclude that her

---

[2]Under *People v. Shreck*, 22 P.3d 68 (Colo. 2001), a trial court determines whether proffered scientific expert testimony is reliable and relevant by considering whether: (1) the scientific principles underlying the testimony are reasonably reliable; (2) the expert is qualified to opine on such matters; (3) the expert testimony will be helpful to the jury; and (4) the evidence satisfies Colo. R. Evid. 403.  *Id.* at 77-79.

statement was so prejudicial as to warrant a mistrial, nor can we state that
the trial court abused its discretion in denying the motion for a mistrial.

Docket No. 9-4, at 22.

The Court finds that the state appellate court's determination that Applicant was
not prejudiced by the social worker's testimony was a reasonable application of federal
due process law.  The testimony of the fact witnesses, including Applicant's own
confession, overwhelmingly established Applicant's guilt.  There is no substantial
likelihood that the expert's limited improper opinions tipped the scales against Applicant
so as to deprive him of a fair trial.  Applicant therefore cannot prevail on his claim for
federal habeas relief.

## V.  ORDER

Accordingly, it is

ORDERED that Applicant Nicholas Cutshall's Application for a Writ of Habeas
Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 1], filed March 4, 2011, is denied and
this action is dismissed with prejudice.  It is further

ORDERED that a certificate of appealability shall not issue because Applicant
has not made a substantial showing of the denial of a constitutional right.  28 U.S.C.
§ 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529
U.S. 473, 483-85 (2000).  It is further

ORDERED that leave to proceed *in forma pauperis* on appeal is denied.

DATED June 11, 2012.

BY THE COURT:

　s/Philip A. Brimmer　　　　　　　　　　
PHILIP A. BRIMMER
United States District Judge